IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PNC BANK, NATIONAL ASSOCIATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil A. No. 24-1374 |
| | ) | Judge Nora Barry Fischer |
| ARCHITECTURAL GRAPHICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

**I.    OVERVIEW**

This is an action for breach of contract and declaratory judgment concerning Defendant Architectural Graphics, Inc.'s alleged contractual indemnity obligations to Plaintiff PNC Bank National Association arising from Plaintiff's own contractual indemnification obligations to third-party Walmart in a personal injury litigation pending in Texas State Court (the "Underlying Litigation").[1]  As discussed below, the Court finds that Plaintiff has failed to state a presently actionable claim in connection with Defendant's refusal to reimburse Plaintiff's own indemnification costs expended in Walmart's defense in said Underlying Litigation.  Although it appears that the action is therefore subject to dismissal, the Court will exercise its discretion to instead stay the action at the parties' behest, until resolution of the Underlying Litigation or until PNC's claims otherwise become ripe for determination (e.g., by adjudication of claims or defenses prior to full resolution of the underlying action).

---

[1] *Martha Gonzalez Luna & Juanita Gonzalez v. Britten Lift and Installation Services, LLC*, Cause No. 22-02-40809 (365th Judicial District), brought in February 2022 and currently pending, with discovery ongoing, in the District Court of Maverick County, Texas ("*Gonzalez Luna*").  Each of the entities named above, *i.e.*, Defendant AGI, Plaintiff PNC and Walmart, is among the defendants in this underlying litigation.

1

## II.     BRIEF FACTUAL AND PROCEDURAL HISTORY

Plaintiff PNC's Complaint (Docket No. 1) was filed in October, 2024 and brings claims for breach of contract (Counts I and II) and declaratory judgment (Count III) premised on Defendant AGI's alleged obligations under two separate indemnification agreements: that between AGI and PNC's predecessor in interest, Compass Bank, dated April 1, 2019 (the "Compass Agreement") and that between AGI and PNC, dated October 1, 2019 (the "PNC Agreement").[2]  As asserted in PNC's Complaint, "AGI agreed to manufacture, install, maintain, and repair signs at PNC Bank locations and indemnify PNC Bank against any liabilities resulting from that work." (*Id.* at ¶ 2).[3] Under a separate agreement – the Master Lease Agreement between its predecessor in interest, Compass Bank, and Walmart - PNC assumed indemnification of liability incurred by Walmart.

The Underlying Litigation arose from serious personal injuries sustained when a PNC location sign installed by AGI/AGI's subcontractor (also a defendant) at a Walmart store in Eagle Pass, Texas detached from the store's exterior wall, fell and injured one or more persons. Under the terms of its indemnification agreements, AGI is presently defending PNC in that action. It has declined, however, to reimburse PNC for the funds the latter is currently expending in Walmart's defense pursuant to the terms of PNC's own contractual indemnification agreement with Walmart and the claim tendered in the Underlying Litigation. (*Id.* at ¶¶ 3-5, 12, 15, 17).[4]  And in December, 2024, AGI moved to dismiss Plaintiff's Complaint. (Docket No. 14).

---

[2] Pursuant to its terms, the Compass Agreement is governed by Alabama law, while the PNC Agreement is governed by Pennsylvania law.

[3] After Compass Bank merged into PNC, the existing Compass Bank sign was resurfaced with a PNB Bank branded sign by AGI. (*Id.* at ¶¶ 33-37).

[4] PNC asserts that "the Walmart claim triggers AGI's indemnity obligations" under the PNC Agreement "as (i) a "Claim" for "costs, expenses (including, without limitation, attorneys' and legal fees), damages and other liabilities" (ii) asserted against PNC Bank (iii) arising from AGI's acts or omissions"; and under the Compass Agreement "as (i)

By Order of January 31, 2025 (Docket No. 22), the Court observed that PNC had "improperly relied up matters outside the pleadings" which the Court could not consider in resolving Defendant's then-pending Motion to Dismiss (Docket No. 14) and it therefore denied said motion and directed that Plaintiff file an Amended Complaint. The Court further noted (a) Plaintiff's admissions that certain arguments could not be resolved at this stage pending the Underlying Litigation[5] and (b) the Court's impression that most pertinent cases cited in the parties' briefings were decided subsequent to resolution of the underlying cases by verdict or settlement.[6] It therefore directed the parties to show cause as to why the Court should not decline jurisdiction or alternatively stay this action pending disposition of the claims in *Gonzales Luna*.

There followed Plaintiff's Amended Complaint, AGI's Response and then PNC's Response to the Court's Order to Show Cause, AGI's renewed Motion to Dismiss and Brief in Support thereof and PNC's Response in Opposition. (Docket Nos. 23 through 28, respectively).

---

a "Claim" or "Loss" (ii) asserted against PNC Bank (iii) arising from or related to AGI's services or "any personal injury." (*Id.* at ¶¶ 40-41). In addition to its breach of contract counts under (I) the PNC Agreement and (II) the Compass Agreement, PNC also seeks a declaration that "AGI owes a duty to indemnify PNC Bank against all future defense costs and indemnity amounts pursuant to the Walmart Claim pursuant to [one or both] Agreement[s]." (*Id.* at ¶ 78).

[5] Docket No. 22 at 2, n. 1 (quoting Docket No. 16 at 20-21):

"Plaintiff asserts that it would be premature to dismiss its claims at this juncture because:

> [w]ithout any adjudication on the issue of Walmart's alleged negligence, there is no basis to conclude that PNC seeks indemnification for its own alleged negligent conduct or any alleged negligent conduct of Walmart. Thus, to the extent the *Perry-Ruzzi* rule applies, it cannot preclude PNC's ability to seek indemnification should a jury determine that the work performed by AGI and/or AGI's subcontractors was the factual cause of the injuries litigated in the Luna Lawsuit."

[6] Docket No. 22 at 2, n. 2:

> *See e.g., Doste*r, 32 So. 3d at 1282 (noting that the indemnity claim was filed after the underlying suit was resolved by settlement); *Jacobs Constructors, Inc. v. NPS Energy Servs., Inc*., 264 F.3d 365, 368-69 (3d Cir. 2001) (noting that the District Court had held that certain claims were not ripe and detailing the disposition of the underlying matters); *CentiMark Corp. v. TJX Companies, Inc*., No. 2:21-CV-914, 2023 WL 8438563, at *2 (W.D. Pa. Dec. 5, 2023) (noting plaintiff seeking indemnity for recovery of litigation fees and expenses and settlement paid in underlying action).

### III. CONTRACTUAL INDEMNIFICATION PROVISIONS

**The Compass Agreement (Docket No. 23-3)**

**1 DEFINITIONS**

\* \* \* \*

**(c) "Claims"** means all claims, demands, actions, causes of action, suits, proceedings, lawsuits, prosecutions, investigations, arbitrations, mediations or any other situation or state of facts that would entitle or permit a person, entity, or governmental agency or authority to initiate any type of action or proceeding for any type of relief or remedy.

\* \* \* \*

**(o) "Losses"** means all losses, damages (including all foreseeable and unforeseeable special, incidental and consequential damages), costs, liabilities, fines, penalties, sanctions, demands, assessments, liens, obligations, injuries, and all related costs and expenses (including all reasonable attorney and related legal fees and reasonable costs of investigation, litigation, settlement, judgment and appeal).

**19 INDEMNITY**

**(a)** <u>Indemnification</u>. Supplier will indemnify, defend and hold harmless Compass and its officers, directors, employees, agents, customers, contractors, consultants, third party service providers, successors and assigns (collectively, the "Indemnified Parties") from and against all Claims and Losses that are alleged or asserted against, or actually incurred by, any of the Indemnified Parties arising out of, or relating to, any of the following: (i) the Services being defective or Infringing on any Intellectual Property Rights of any third party; (ii) the breach of this Agreement or the incorrectness, falseness, misleading nature or fraudulent nature of any representation or warranty in this Agreement; or (iii) any personal injury or death or property damage (each, an "Indemnification Claim").

\* \* \* \*

**The PNC Agreement (Docket No. 23-2)**

**9. Indemnity**

**9.1** Seller shall indemnify and hold Purchaser harmless against all costs, expenses (including, without limitation, attorneys' and legal fees), damages and other liabilities associated with any demand, claim, action, suit or proceeding (collectively, "Claims") that arise out of Seller's acts or omissions, violation of Applicable Law, or breach of this Agreement.

>**9.2**  Seller shall indemnify and hold Purchaser harmless against all costs, expenses (including, without limitation, attorneys' and legal fees), damages and other liabilities associated with any Claim that is based in whole or in part on allegations that the Services or Deliverables (collectively, the "Materials") or any use of the Materials infringe any patent, copyright or trademark or misappropriate any trade secret. . . .

## IV.  ANALYSIS

In order to state a claim for breach of an indemnity agreement, PNC must plausibly allege that it has sustained costs (or other injury) due to AGI's failure or refusal to defend or indemnify it under circumstances in which such defense or indemnity is required by the parties' contracts. Here, PNC alleges that it has expended funds to defend Walmart in the Underlying Litigation.[7] This expenditure would constitute injury attributable to a breach of contract if and only if the parties' agreements require AGI to reimburse such costs *pendente lite*.

In its pending Motion to Dismiss, AGI argues that it has no duty to reimburse PNC's costs because (i) the underlying accident (and hence any resulting costs) might prove to be attributable to PNC's own negligence, which is not clearly and unequivocally covered by the parties' indemnity clauses; and (ii) the indemnity clauses also do not clearly and unequivocally cover what amounts to a "pass-through" to AGI of PNC's own contractual indemnity obligations toward Walmart.

Consideration of these issues requires explication of the PNC and Compass Agreements' substantially different indemnity clauses, which are governed, in accordance with their terms, by Pennsylvania and Alabama law, respectively.[8]  First, the PNC Agreement's Indemnity provisions certainly do not provide that PNC's Walmart defense costs, or indeed any litigation costs incurred

---

[7] PNC's own defense in the underlying action is being paid for by AGI.

[8] The Court assumes for purposes of this Memorandum Opinion and Order (and without deciding) that the Compass Agreement remains in effect and has not been superseded with respect to indemnity by the later PNC Agreement.

by PNC, are reimbursable regardless of fault. Under Pennsylvania's *Perry-Ruzzi* doctrine, a contract will not be interpreted to indemnify a party against his own negligence unless such an intent is clearly stated. *See Ruzzi v. Butler Petroleum Co.*, 588 A.2d 1 (Pa. 1991); *Perry v. Payne*, 66 A. 553 (Pa. 1907). *See also, e.g.*, *Jacobs Constructors, Inc. v. NPS Energy Services, Inc.*, 264 F.3d 365, 371 (3d Cir. 2001) ("It is well-settled in Pennsylvania that an indemnity agreement that covers loss due to the indemnitee's own negligence must be clear and unequivocal."). No such intent is stated in the PNC Agreement. On the contrary, the indemnity clause is expressly limited to claims and losses arising out of AGI's breach of contract, violation of law, or other acts or omissions.

The indemnity clause in the Compass Agreement is somewhat more involved. It applies to all "Claims" asserted against, and "Losses" incurred by, indemnified parties (including PNC as successor to Compass), arising out of or relating to, *inter alia*, personal injury. However, the Court cannot discern from the pleadings that PNC's expenses were incurred in defense of a Claim against itself,[9] or were related to damages, liability, or other enumerated categories of Losses.[10] Thus, it is not clear to the Court on the present record that PNC's expenditures to defend Walmart fall within the express scope of the Compass Agreement's indemnity clause.

---

[9] AGI's duty to defend under the Compass Agreement extends only to Claims asserted against PNC (or other specified "Indemnified Parties" not germane here). There is no suggestion in the pleadings that PNC has incurred unreimbursed costs in defending Walmart's indemnity claim, or any other claim against itself. The Court therefore rejects PNC's characterization of its costs to defend Walmart as generic defense costs, and the Court finds the cases cited by PNC calling for payment of defense costs prior to resolution of underlying claims to be inapposite.

[10] Losses covered under the Compass Agreement include attorney's fees and litigation costs, but only to the extent that such costs are "related" to "losses, damages, costs, liabilities, fines, penalties, sanctions, demands, assessments, liens, obligations, injuries". Thus, while an indemnitee's own litigation costs are generally covered under the indemnitor's duty to defend Claims against the indemnitee, any litigation costs that do not fall within that rubric may become covered as "Losses" only when they are linked to one or more of the enumerated forms of loss, *i.e.*, those, as here, generally incurred only upon adjudication or other resolution of Claims against the indemnitee.

Moreover, it appears that the law of Alabama (like that of Pennsylvania) requires a clear expression of an intent to indemnify a party against its own negligence. As the Alabama Supreme Court has repeatedly held, "[o]rdinarily, indemnification for an indemnitee's own negligence requires 'clear and unequivocal language.'" *Doster Const v. Marathon, Elec Contract*, 32 So. 3d 1277, 1283 n.2 (Ala. 2009) (quoting *Harsco Corp. v. Navistar Int'l Transp. Corp.*, 630 So.2d 1008, 1011 (Ala. 1993)).

PNC contends that under Alabama law, indemnity for "all" liability "clearly and unequivocally extend[s] to . . . liability based on the indemnitee's negligence." Docket No. 25 at 10 (citing *Nationwide Mut. Ins. Co. v. Hall*, 643 So.2d 551, 556-57 (Ala. 1994)). It is true that the court in *Hall* "reiterate[d] . . . that talismanic or thaumaturgic language, such as a specific reference to the negligence of the indemnitee, is not necessary *if the requisite intent is otherwise clear*." 643 So.2d at 557 (emphasis added).[11] However, this Court has not been directed to anything in the language or structure of the Compass Agreement, or the parties' course of dealing thereunder, that might clearly show such an intent.[12]

To the extent that the parties' Agreements, interpreted in accordance with governing law, do not provide for indemnity against PNC's own negligence, PNC's reimbursement claims are not ripe. The present pleadings in this action do not plausibly support a conclusion either that PNC's expenditures to defend Walmart arise out of or are related to misconduct on AGI's part (as is required under the PNC Agreement), or that they did not arise out of negligence on PNC's part (as

---

[11] To similar effect, *see Pyle v. Pizitz*, 215 Ala. 398, 401 (Ala. 1927) ("[A] contract of indemnity . . . . cannot be extended to losses or damages neither expressly within its terms, nor of such character that it may reasonably be inferred that the parties intended to covenant against them").

[12] In construing the Compass Agreement with respect to this question, the Court is mindful of the Alabama Supreme Court's admonition that "[w]hen one seeks indemnification from another for damages that were caused by his own negligence, strict construction of the indemnity agreement against the contractor is particularly appropriate." *Hall*, 643 So.2d at 555.

7

is required under both Agreements). Nor is it likely, given the current posture of the Underlying Litigation, that an amendment to the pleadings now could supply these missing elements. Rather, it appears that PNC's ultimate entitlement to reimbursement may depend on a future determination of fault in the Underlying Litigation.

Even if the parties' Agreements clearly and unequivocally covered PNC's own negligence, or even if the present pleadings (or a potential amendment thereof) plausibly alleged that PNC's costs are not attributable to any negligence on its part, PNC would still face the hurdle of showing that the indemnity clauses were intended to cover costs arising from PNC's contractual undertakings.

In *Jacobs*, the Third Circuit predicted that "the Pennsylvania Supreme Court would hold that the *Perry-Ruzzi* doctrine applies to indemnity claims for losses contractually assumed by the indemnitee." *Jacobs*, 264 F.3d at 372. The court explained:

> We reach this conclusion for several reasons. First, the policy underlying the *Perry-Ruzzi* doctrine applies with equal force to indemnification for contractual liability to a third party. Similar to a contract to indemnify another for his own negligence, an agreement to indemnify another for his contractual liability to a third party imposes an obligation, regardless of the fault of the indemnitor. Further, the extent of such an obligation is "uncertain and indefinite, and entirely in the hands of [the indemnitee.]" *See Perry*, . . . 66 A. at 555. Therefore, such indemnification imposes an "unusual" and "extraordinary" obligation in the same manner as indemnification for one's own negligence. Thus, such an obligation must be stated plainly, in clear and unequivocal language.

*Id.* (brackets in original).

The Pennsylvania Supreme Court has signaled its agreement with the *Jacobs* court's conclusion. In *Bernotas v. Super Fresh Food Markets, Inc.*, 581 Pa. 12 (Pa. 2004), the court noted the *Jacobs* holding and rationale, and observed that "[a]lthough . . . pass-through clauses may be generally enforceable, as noted by the Third Circuit, upholding these provisions strictly in the case

of indemnification clashes with our rule of law requiring indemnification language to be unequivocally stated in the contract." *Id.* at 21. Absent contrary intervening guidance from the Third Circuit or the Pennsylvania courts, this Court is bound to follow *Jacobs* and conclude that Pennsylvania law requires a clear and unequivocal statement of an intent to indemnify for pass-through contractual obligations.[13]

AGI contends that the same factors which informed the *Jacobs* court's prediction as to Pennsylvania law support a like conclusion as to Alabama law – *viz.*, that indemnity for contractual liabilities must be clear and unequivocal. (Docket No. 27 at 13-15). In contrast, PNC asserts that the Alabama Supreme Court has adopted a contrary rule. Specifically, PNC contends that the court's opinion in *Doster* "held that an . . . agreement to indemnify 'all liabilities, claims, [and] losses,' . . . unambiguously applied to an indemnitee's 'own contractual undertakings [such as his] own indemnity agreement with a third party.'" Docket No. 25 at 11 (quoting *Doster*, 32 So.3d at 1284). However, a close reading of *Doster* reveals that the court predicated coverage of the indemnitee's contractual liabilities, not on the indemnitor's broad promise to "defend and indemnify . . . against . . . all liabilities, claims, suits, actions, proceedings, damages, losses, judgments, and expenses (collectively, 'Indemnified Losses')", but rather on the indemnitor's further express agreement to "assume any obligations of the Indemnitees for" such Losses. *Doster*,

---

[13] The Court further concludes that no sufficiently specific statement of such an intent occurs within the PNC Agreement.

PNC argues that "*Perry-Ruzzi* does not . . . apply" because it "is not seeking to pass through indemnification for Walmart's negligence", but instead is "seeking indemnification for liabilities arising out of [AGI's] conduct." (Docket No. 25 at 17). But PNC's argument misses the mark: the *Perry-Ruzzi* doctrine applies to any claims, liabilities or costs that arise from PNC's negligence, whether or not they also arise from AGI's conduct or Walmart's negligence. And the Third Circuit's recognition of an extension of that doctrine to an indemnitee's contractual obligations applies to any pass-through of such obligations, without regard to the negligence or alleged negligence of any party. Here, it cannot be gainsaid that PNC is seeking to pass through to AGI the costs PNC has incurred in indemnifying Walmart – which under the rule recognized in *Jacobs* it cannot do absent a clear expression to that effect in the PNC Agreement.

9

32 So.3d at 1280, 1284.[14]  In the present case, there is no similar undertaking on the part of AGI to assume PNC's obligations.

Weighing the parties' arguments and the case law, the Court finds the parameters of Alabama law regarding indemnity for contractual liabilities to be unclear; and it may at some later time become necessary to predict how the Alabama Supreme Court would resolve the issue in this case.  What is clear to this Court now is that even if PNC is ultimately entitled to reimbursement of its contractual indemnification costs, its claims are at present unripe, and will not become ripe until resolution of the Underlying Litigation supplies requisite information about the fault/no-fault element of Plaintiff's claims.[15]

Although the Court concludes that PNC's Amended Complaint may be subject to dismissal for failure to state a presently actionable claim, both parties have expressed a preference that the Court issue a stay in lieu of dismissal.  The Court finds that such a course would not only serve the parties' interests in efficient resolution of their dispute but would also further the public interest in judicial economy.

---

[14] The *Doster* Court reasoned that "Doster's indemnity agreement with [a third-party contractor] clearly constitutes an obligation of Doster " *Doster*, 32 So.3d at 1284.

[15] The Court recognizes that PNC has also asserted declaratory judgment claims, as discussed in Section II, *supra*, and the parties' briefings.  Because any declaration of rights or obligations prior to resolution of the Underlying Litigation might prove to be speculative or contingent, the Court will exercise its discretion to decline to address PNC's declaratory claims on a stand-alone basis.

> The Declaratory Judgment Act, 28 U.S.C. § 2201, states: "In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Id*. (emphasis added). As *Step–Saver* explained, there is a "considerable amount of discretion" built into the Declaratory Judgment Act. *Step–Saver*, 912 F.2d at 643. "Even when declaratory actions are ripe, the Act only gives a court the power to make a declaration regarding 'the rights and other legal relations of any interested party seeking such declaration,' 28 U.S.C. § 2201; it does not require that the court exercise that power." *Id*.

*AXIS Ins. Co. v. PNC Fin. Servs. Grp., Inc*., 135 F.Supp.3d 321, 330 (W.D. Pa. 2015).

## V.   CONCLUSION

Accordingly, this action is stayed pending disposition of the Underlying Litigation or until such time as Plaintiff's claim(s) herein may become ripe for disposition (e.g., by adjudication of claims or defenses prior to full resolution of the underlying action), and Defendant's Motion to Dismiss (Docket No. 26) is denied as moot, without prejudice.  An appropriate Order follows.


Dated:  March 25th, 2025                                    *s/ Nora Barry Fischer*
                                                                              Nora Barry Fischer
                                                                              Senior U.S. District Judge


cc/ecf:   All counsel of record